UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

ALEX HAMILTON,

            Plaintiff,

    v.

NANCY A. BERRYHILL, Deputy Commissioner of Social Security for Operations,

            Defendant.

Case No. C17-5493 RAJ

**ORDER REVERSING AND REMANDING CASE FOR FURTHER ADMINISTRATIVE PROCEEDINGS**

Plaintiff seeks review of the denial of his application for Disability Insurance Benefits. Plaintiff contends the ALJ erred by discounting his testimony and the lay testimony of his wife, and failing to account for all the limitations in a medical opinion to which the ALJ gave great weight. Dkt. 11. As discussed below, the Court **REVERSES** the Commissioner's final decision and **REMANDS** the matter for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).

## BACKGROUND

Plaintiff is currently 30 years old, has a high school education, and has worked as an auto mechanic in the military. Tr. 39. In June 2015, plaintiff applied for benefits, alleging disability as of May 6, 2015. Tr. 25. Plaintiff's applications were denied initially and on reconsideration. Tr. 25. After the ALJ conducted a hearing on August 9, 2016, the ALJ issued a decision finding

plaintiff not disabled. Tr. 25-41.

## THE ALJ'S DECISION

Utilizing the five-step disability evaluation process,[1] the ALJ found:

**Step one:** Plaintiff has not engaged in substantial gainful activity since the alleged onset date of May 6, 2015.

**Step two:** Plaintiff has the following severe impairments: posttraumatic stress disorder (PTSD), anxiety disorder, mild bulge at L4-L5 with lumbar radiculopathy, small disc protrusion at C6-C7, status post tendon tear to the right ankle, and headaches.

**Step three:** These impairments do not meet or equal the requirements of a listed impairment.[2]

**Residual Functional Capacity:** Plaintiff can perform light work, except he can only occasionally climb ladders, ropes or scaffolds and frequently stoop, crouch, or climb ramps or stairs. He can perform simple, routine tasks with a reasoning level of 1 or 2. He can have no public contact and only occasional superficial contact with coworkers. He should avoid concentrated exposure to workplace hazards.

**Step four:** Plaintiff cannot perform past relevant work.

**Step five:** As there are jobs that exist in significant numbers in the national economy that plaintiff can perform, he is not disabled.

Tr. 27-40. The Appeals Council denied plaintiff's request for review, making the ALJ's decision the Commissioner's final decision. Tr. 1.[3]

## DISCUSSION

While there is no dispute that plaintiff has several physical and mental impairments, the only issues under review here concern mental impairments. Plaintiff argues that his testimony and his wife's statements establish that he needs to take irregular breaks during the day to rest because his nighttime sleep is severely disrupted by night sweats, night terrors, and nightmares,

---

[1] 20 C.F.R. §§ 404.1520.
[2] 20 C.F.R. Part 404, Subpart P. Appendix 1.
[3] The rest of the procedural history is not relevant to the outcome of the case and is thus omitted.

ORDER REVERSING AND REMANDING
CASE FOR FURTHER ADMINISTRATIVE
PROCEEDINGS - 2

and that he has irregular anger outbursts. Dkt. 11 at 4-5. Plaintiff also contends that medical opinions establish that his RFC must include limitations on interacting with supervisors and on routine changes and stressful situations. Dkt. 11 at 10.

**A.      Examining Medical Source M. Kevin Turner, Ph.D.**

The ALJ gave "great weight" to Dr. Turner's September 2015 opinions that plaintiff's "ability to interact with the public, authority figures and peers was likely to be moderately impaired" and that he was "moderately likely to decompensate under routine changes and stressful situations…." Tr. 38 (citing Tr. 1252). However, in the RFC, the ALJ did not limit interactions with authority figures such as supervisors, and did not limit routine changes or stressful situations.

The Commissioner argues that the ALJ accounted for Dr. Turner's assessment of plaintiff's ability to interact "with others" by limiting his contact with the public and coworkers. Dkt. 15 at 4. These limits address plaintiff's ability to interact with "the public … and peers" but not "authority figures." The Court concludes the ALJ erred by failing to include Dr. Turner's opined limitation on interaction with supervisors.

The Commissioner argues that the limitation to jobs at reasoning level 1 or 2 adequately prevents decompensation by limiting routine changes and stressful situations, because such jobs are defined as having few, occasional, or no variables. Dkt. 15 at 4 (citing *Dictionary of Occupational Titles*, Appendix C, Section III, available at 1991 WL 688702). The definitions limit the number of variables a worker must deal with at a given point in time, but they do not limit how frequently a worker's routine changes. Furthermore, a limitation on variables does not limit stressful situations. A situation can be stressful even with no changes or variables. Performing a simple task at a high speed can be stressful, for example, especially if there is little

tolerance for error.

The ALJ thus failed to incorporate two of Dr. Turner's limitations into the RFC: the limitation on interactions with supervisors, and the limitation on routine changes and stressful situations. The failure to incorporate these limitations into the RFC finding, or provide a legally sufficient reason for rejecting them, renders the ALJ's RFC finding incomplete and unsupported by substantial evidence. The error is harmful because the ALJ may have relied at step five on jobs plaintiff cannot perform. *See Hill v. Astrue*, 698 F.3d 1153, 1161-62 (9th Cir. 2012).

**B.     Plaintiff's Testimony**

Plaintiff argues the ALJ erred in discounting his testimony that he would need irregular breaks during the day because of sleep disruptions, including night sweats,[4] and that he had angry outbursts. Tr. 11 at 2. Where, as here, an ALJ finds that a claimant has established underlying impairments that may reasonably be expected to cause the alleged symptoms and there is no affirmative evidence of malingering, the ALJ may reject plaintiff's testimony about the severity of his symptoms only "by offering specific, clear and convincing reasons" supported by substantial evidence. *Trevizo v. Berryhill*, 871 F.3d 664, 678 (2017); *see also Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008) (court reviews "whether the ALJ's adverse credibility finding of [a claimant's] testimony is supported by substantial evidence under the clear-and-convincing standard").

Relying on *Laborin*, plaintiff contends the ALJ erred by discounting his testimony generally, rather than finding specific inconsistencies with his testimony that sleep disruptions cause him to need to lie down during the day and his testimony on anger outbursts. Dkt. 11 at 4-

---

[4] However, plaintiff also testified in the August 2016 hearing that after he was given medication for PTSD, "the night sweats went away...." Tr. 79.

6 (citing *Laborin v. Berryhill*, 867 F.3d 1151, 1155 (9th Cir. 2017)). *Laborin* provides:

> To discredit a claimant's symptom testimony when the claimant has provided objective medical evidence of the impairments which might reasonably produce the symptoms or pain alleged and there is no evidence of malingering, the ALJ must give "specific, clear, and convincing reasons for rejecting" the testimony by identifying "*which* testimony [the ALJ] found not credible" and explaining "*which* evidence contradicted that testimony."

*Laborin*, 867 F.3d at 1155 (alterations in original) (quoting *Brown–Hunter v. Colvin*, 806 F.3d 487, 489, 494 (9th Cir. 2015)). Plaintiff interprets this to mean that the ALJ can only reject a statement if other evidence contradicts that specific statement. However, once an ALJ has specified which evidence contradicts which testimony, the Ninth Circuit permits the ALJ to make a more general credibility assessment based on the contradiction or any other specific, clear, convincing reason. *See*, *e.g.*, *Thomas v. Barnhart*, 278 F.3d 947, 960 (2002) ("the ALJ properly rejected her testimony by … providing a specific, clear and convincing reason … that her testimony was generally not credible"); *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997) ("An ALJ's finding that a claimant generally lacked credibility is a permissible basis to reject excess pain testimony.").[5] The Court must therefore uphold the ALJ's credibility determination if she provided a specific, clear and convincing reason supported by substantial evidence. *Trevizo*, 871 F.3d at 678.

The ALJ discounted plaintiff's testimony on his mental symptoms because he had a long history of symptoms before he stopped working, and periods of increased symptoms were largely

---

[5] In *Laborin*, according to the concurrently filed unpublished disposition, the ALJ approached the claimant's testimony piecemeal and rejected each symptom based on purported inconsistencies, and thus the reviewing court analyzed the ALJ's decision in a similar piecemeal fashion. *See Laborin v. Berryhill*, 692 Fed. Appx. 959, 961 (2017). A symptom-by-symptom approach is not required, however. *See Light*, 119 F.3d at 793 (reversing and remanding because "the ALJ failed to articulate an acceptable reason either for disbelieving Light's testimony in general or for discrediting his pain testimony specifically").

due to situational stressors. Tr. 32.  The ALJ also discounted plaintiff's testimony because some of his statements are inconsistent with the record.  Tr. 35-36.

The fact that alleged impairments did not prevent a claimant from working successfully indicates the ability to perform work activities and undermines claims of disability.  Plaintiff does not dispute that his symptoms started well before he stopped working at a high level of responsibility.  Plaintiff testified that he worked as a motorcycle shop foreman from 2012 to 2014.  Tr. 60.  After that, most of his duties and responsibilities were taken from him.  Tr. 60-61.  In November 2012, plaintiff was hospitalized "due to his level of anxiety and disorganized state" and "concern that he may harm himself if anxiety symptoms increase."  Tr. 1812-13.  Yet he continued working as a foreman for at least another year.  Plaintiff also reported night sweats as early as November 2013.  Tr. 879.  The ability to continue working indicates impairments are not disabling, and constitutes a specific, clear, convincing reason to discount plaintiff's testimony.

Plaintiff does not dispute that his symptoms were exacerbated during periods of situational stress, and improved when the stressors receded.  For example, the November 2012 hospitalization was related to "anxiety about the increase in responsibility at work."  Tr. 1812.  In January 2013, after learning better coping mechanisms, plaintiff's mental status examination was normal and he reported that he had discontinued psychiatric medications and wished to remain without them.  Tr. 1684.  Plaintiff also does not dispute the ALJ's finding that later periods of increased symptoms have been "situational and related to the process of his separation from the military and relocation to a different State."  Tr. 33.  Given that the military separation and relocation are complete, those stressors are unlikely to recur.

The ALJ found that plaintiff "made numerous inconsistent statements regarding matters relevant to the issue of disability."  Tr. 35.  Plaintiff does not dispute any inconsistencies, but

argues that none relate to his testimony about disrupted sleep and anger outbursts. Dkt. 11 at 5-6. Inconsistencies may, however, establish a general lack of credibility. *Light*, 119 F.3d at 792. Here, inconsistencies between plaintiff's statements and the record regarding medication and drug use are a valid reason to discount his testimony. *See Thomas*, 278 F.3d at 959. Plaintiff also testified that his wife had no family in Washington state, which was inconsistent with his wife's testimony that they moved to Washington because her "brother lived out here so I knew that we could move out here and stay with him until we got on our feet." Tr. 67, 86. Although the ALJ may have included other purported inconsistencies unsupported by substantial evidence, the error is harmless because the remaining reasons to discount plaintiff's testimony are specific, clear and convincing. *See Carmickle*, 533 F.3d at 1162-63 (where an ALJ provides valid reasons to discount a claimant's credibility, inclusion of other erroneous reasons is harmless).

The Court concludes the ALJ did not err in discounting plaintiff's testimony regarding anger outbursts and the need for irregular daytime breaks due to disrupted sleep.

**C.   Lay Testimony**

Plaintiff's wife, Danielle Hamilton, testified at the August 2016 hearing that plaintiff "gets angry and frustrated very easily" and has broken things and hit himself during these outbursts. Tr. 87. She also testified that she has to remind him to take care of personal hygiene such as showering and brushing his teeth. Tr. 90. In a June 2015 function report, she stated that he can only "work for 15-30 minutes before he either bursts or becomes too overwhelmed and stressed" and that "at times he does nothing but sleep because of his depression, nightsweats that drenches the bed." Tr. 324, 293. The ALJ gave her testimony "partial weight" on the grounds that one of plaintiff's treatment providers felt she was "enabling" him.[6] Tr. 37. The ALJ also

---

[6] The ALJ also stated plaintiff reported his wife "controlled" much of what he did even before

ORDER REVERSING AND REMANDING
CASE FOR FURTHER ADMINISTRATIVE
PROCEEDINGS - 7

discounted Ms. Hamilton's testimony based on inconsistent explanations of why she left work for a year, and because plaintiff was able to live on his own for three months. Tr. 37.

In order to discount competent lay witness testimony, the ALJ must give "germane" reasons supported by substantial evidence. *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005). "Substantial evidence" is more than a scintilla, less than a preponderance, and is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989) (*quoting Davis v. Heckler*, 868 F.2d 323, 326 (9th Cir. 1989)). Plaintiff does not dispute that the ALJ's reasons for discounting his wife's testimony are supported by substantial evidence, but argues that they are not "germane" to his sleep disruptions and anger outbursts. Dkt. 11 at 7. But plaintiff's own citations establish that the reasons must be germane "to each witness"—not to each specific statement by the witness. *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993).

To support the charge of enabling, the ALJ cites a treatment note stating that the "[t]herapist will also discuss [claimant's] wife enabling him to avoid certain tasks and activities by overcompensating for him." Tr. 1304. Plaintiff does not dispute that this is more than a scintilla of evidence, and the reason is germane because his wife doing more than necessary for him tends to discount her testimony on the severity of his impairments.

The ALJ also discounted plaintiff's wife's testimony because "despite her claim of having to do everything for the claimant, the claimant was able to live on his own from March through May 2016, when she moved to Washington to start her new job and he was still waiting for his military separation to process." Tr. 37. Plaintiff's wife testified that she had to remind

---

the alleged onset of disability, but cites no evidence at all and the Court can find none in the record. This reason is not supported by substantial evidence. The error is harmless, however, as adequate reasons remain.

him to take care of his personal hygiene, that she leaves food for him because he does not cook for himself, that she leaves him chore lists, and that she does the driving. Tr. 88-91. This reason is germane because, again, overstating his needs diminishes the reliability of her testimony as to the severity of his impairments.

The ALJ also discounted plaintiff's wife's testimony based on an inconsistency in her reason for quitting her job. She testified at the hearing:

> I took the year off because I had to take care of him. He could not take care of himself. I was working while he started this process and it was just way too overwhelming because he couldn't keep everything in order so I was trying to work and keep his things in order and so I took the year off and just tried to get him all set.

Tr. 89. In context, "this process" appears to be the separation and relocation process. The ALJ found that her testimony was contradicted by treatment notes from September 2015 reporting that plaintiff's "wife stated she quit her job in response to the re-location notice…." Tr. 1248; Tr. 37. What the ALJ found contradictory between these statements is not clear. An ALJ "must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit" the testimony. *Thomas*, 278 F.3d at 958. However, any error is harmless, as the remaining reasons are sufficiently germane to discount plaintiff's wife's testimony.

The Court concludes the ALJ did not err in discounting plaintiff's wife's testimony.

**D.  Scope of Remand**

Plaintiff argues the Court should remand for an award of benefits. In general, the Court has "discretion to remand for further proceedings or to award benefits." *Marcia v. Sullivan*, 900 F.2d 172, 176 (9th Cir. 1990). The Court may remand for further proceedings if enhancement of the record would be useful. *See Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000). The

Court may remand for benefits where (1) the record is fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ fails to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand. *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014).

Here, the Court finds that the record, as it stands, does not compel a finding of disability. There is no evidence in the record as to whether, if Dr. Turner's opined limitations were fully incorporated into the RFC, there would be significant numbers of jobs that plaintiff could perform. Accordingly, remand for further proceedings is appropriate in this case.

## CONCLUSION

For the foregoing reasons, the Commissioner's final decision is **REVERSED** and this case is **REMANDED** for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).

On remand, the ALJ should reassess the RFC in light of Dr. Turner's limitations on supervisor interactions, routine changes and stressful situations, and proceed to step five as needed.

DATED this 13th day of June, 2018.

_____
The Honorable Richard A. Jones
United States District Judge